SAMUEL A. CARTWRIGHT *v.* FRANCES A. DENNY and others.

THE defendants are appellants from a judgment of the District Court of Concordia, *Curry*, J.

*Stacy* and *Lawrence*, for the plaintiff.

*F. H. Farrar*, for the appellants.

BULLARD, J. The petitioner represents himself, and the heirs of Lintot, as owners of two adjoining tracts of land on Lake Con-

cordia, one of which, now owned by him, formerly belonged to William Blount, containing 450 *arpens*, and was held under a title, commonly called a *Requête* and permission to settle, in his favor, bearing date the 14th Nov. 1802, given by Don José Vidal, Commandant of the post of Concordia, and a survey by Pedro Walker, confirmed by the Land Commissioners at Opelousas. That the tract owned by the heirs of Lintot contains 560 superficial *arpens* fronting on the lake, bounded on the north-west by the above tract of Blount. He represents that a difficulty has arisen between him and the heirs of Lintot, in relation to the fixing the true and correct boundary line between the two adjoining tracts. That the heirs of Lintot claim a line running through the land of the plaintiff, which, if permitted, would greatly injure him, by cutting off a large part of his land. That the true boundary line is no longer to be seen; and that it has become necessary that the same should be investigated, sought for, and established by judicial authority, which he prays may be done accordingly.

The defendants aver, that they are the owners of a tract of land containing 560 *arpens*, called the Lintot tract. They admit that their ancestor acquired title by virtue of a *Requête* and permission to settle, and actual survey made by proper authority, both dated the 14th of Nov., 1802; that their title has been confirmed by the Land Commissioners; that, about that time, William Lintot took possession of the tract, and, on the north-western line, where it is bounded by Blount's tract, cleared and cultivated about eighty acres; that he retained possession of the said clearing, as being within his boundary, according to the survey, and never abandoned the possession during his lifetime, and that his heirs have remained in possession since his death, and always claimed the same boundary; and that the plaintiff, and one Megee, rented said eighty acres from the respondents during the year 1832, and cultivated the same as their tenants. They further pleaded prescription.

The primitive title under which the defendants hold, bears the same date with that of the plaintiff; and the survey appears to have been made on the same day. The only difference is, that the defendants' title calls to be bounded on one side by Blount; and Blount's, at the time of the survey, was bounded on one side by the lake, and on the other three by the domain.

The Spanish surveys, which are before us, exhibit the two tracts as they are described in the pleadings; that of Lintot, as bounded on one side by Minor, on the other by Blount, having its front on Lake Concordia, with side lines three hundred perches in length, but the length of the front and back lines not given— the area to contain 560 *arpens*. The corner of Minor's and Lintot's land on the lake is represented by a hoop ash, and the upper corner of the survey by an oak. The front of the Blount tract is given; it is two hundred perches; but the land is represented as bounded on all the other sides by the domain. The north-eastern line runs from the lake, in a direction N. 33 E., and corresponds with the north-western line of the Lintot tract adjoining; and the problem to be solved in this case, is, the discovery and establishment of this division line. There does not appear to be any dispute as to the corner of the Lintot and Minor tracts on the lake.

The parties differ widely as to the division line. The disputed ground is an area of about 218 acres. The plaintiff contending that the line, according to the titles, is to be determined by beginning at the corner of the Lintot and Minor tracts on the lake, and running such a distance up the lake as will give the superficies represented on the original survey by Walker. The defendants, on the other hand, insist that there was an acknowledged boundary, by which the adjacent proprietors held the land, beginning at the north-western side of an old clearing, which is represented on the plat by small dotted lines.

To this it is answered by the plaintiff, that the evidence does not establish any such conventional line; that there are no landmarks in that direction, to indicate that such a line had been run by the surveyor; that it would give to the defendants much more land than their title calls for; that running the defendants' front from the acknowledged corner, in the direction indicated by the old marks upon the lines, would throw the upper corner contended for by the defendants, some distance into the lake. On the other hand, it is urged, that Walker's survey calls for an oak at the upper corner of the defendants' land; that the stump of this oak remains, with ancient surveyor's marks upon it, at the distance of 250 perches from the lower corner; that the marks extend be-

tween those two points, and no farther up the lake ; that a front of 250 perches by a depth of 300, the side lines converging towards the depth 23 degrees, would give even more than the area called for by the defendants' title ; and, consequently, that the line contended for by him conforms both to the titles and to the marks upon the trees.

It cannot be disputed, that the location of the Lintot tract, as contended for by the plaintiff, conforms to the primitive titles, and is not contrary to the description of the land given in the mesne conveyances ; and that the line B. H. must be held to be the true boundary between the parties, unless the parol evidence establishes a conventional line, or the action be barred by prescription. The evidence we think insufficient to establish prescription, and it, therefore, only remains to inquire whether the defendants have shown, by satisfactory evidence, that the division line, as claimed by them, was ever agreed to by the proprietors of the adjacent tracts.

The defendants rely upon the testimony of Thomas Alexander and Dr. Kerr, to establish the line D. J., on the plat made by the surveyor under the order of court, as the true line run by Walker, and that it was always claimed by the defendants, and admitted by Blount and every subsequent owner, as the true division line. The counsel do not contend that there are any natural objects or artificial monuments described and called for in the title papers and surveys, which are now to be seen, and which are identified by the witnesses. They, however, contend that this line is conclusively established.

Alexander swears that he knows the line D. J. ; that he pointed out an ash tree marked W. B., at the point K., to some surveyors who, he understood, were surveying the land for the parties. That there was an old line, well marked, running from the ash to an old field which is cleared, two or three hundred yards from the bank of the lake. The line was continued until it struck the lake, at which they could not find any corner, and to a point claimed at D. It may be remarked, in passing, that from K to D, the distance is not 300 perches, and of course the ash could not be a corner tree of the survey by Walker ; and there is no evidence that it was afterwards agreed upon by the parties. The

witness thinks there was no land cleared to the east of that line, in 1809. He proves the improvement made by the heirs of Lintot to the eastward of that line, and that there was a fence upon the line spoken of.

Dr. Kerr had known the two tracts of land for a long time, and had rented the old field from the heirs of Lintot. He says that near the fence there were trees understood and recognized to be the corner of the two tracts by the overseer of the Blount tract, and by those interested in making the levees. He says that Green, when owner of the Blount tract, rented the same field from the heirs of Lintot, as well as all the succeeding owners.

A careful examination of the evidence, and particularly of the testimony of the two witnesses mainly relied on, has failed to satisfy us that the line contended for by the defendants, has ever been settled and agreed upon, as the division line between the two tracts. The titles are consequently to govern.

The lines, as run by the Spanish surveyor, can no longer be traced with any certainty, by means of monuments or land marks, but the controlling calls of the original titles are simple, and easily followed. The two tracts are separated from each other by a line at a distance of about twenty-five *arpens*, on the lake, from Minor's land below, according to the Commissioner's certificate, which runs north thirty-three degrees east a distance of thirty *arpens*. The operations of the surveyor, who surveyed the land under the order of the court, show this line to be represented on the plat by the letters B. H. The District Court concluded that this was the division line between the parties, and decreed, accordingly; and we are not satisfied that it erred.

*Judgment affirmed.*